# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARNETTA BEKINNIE, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-08-478-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|          **Defendant.** | ) |

## OPINION AND ORDER

The claimant Arnetta Bekinnie requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 2, 1971, and was thirty-six years old at the time of the administrative hearing. She has a tenth grade education and received vocational training to become a certified nurse's aide and a certified medication aide. She previously worked as a nurse's aide, a sewing machine operator, a home attendant, and a hand packager (Tr. 15-16). The claimant alleges that she has been unable to work since February 1, 1997 because of depression, carpal tunnel syndrome, posttraumatic stress disorder, and back problems.

## Procedural History

The claimant applied on May 5, 2007 for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Michael A. Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated June 2, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had no physical impairments or work-related physical limitations, but that a

mental impairment limited her to simple, routine, unskilled tasks not requiring interaction with the general public (Tr. 13). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, industrial cleaner, poultry hanger, and housekeeper (Tr. 18).

## Review

The claimant contends, *inter alia*, that the ALJ erroneously failed to consider her low Global Assessment of Functioning (GAF) scores in determining whether she retained the capacity to perform work. The Court finds this contention dispositive.

The claimant appeared at the administrative hearing without representation and elected to proceed *pro se* (Tr. 28). She testified that she worked on her GED while in prison, that she attends regular counseling sessions with PACT (a division of Carl Albert Community Mental Health, in Ada, Oklahoma) and that she sees a psychiatrist once or twice a month (Tr. 33-35). The claimant testified that paranoia keeps her from working (Tr. 37), that she hears voices telling her to hurt herself (Tr. 40) and that she attempted suicide by taking Seroquel after her release from prison (Tr. 41). The claimant also reported looking for jobs but not finding any because of her prison record (Tr. 44).

The claimant's medical records indicate she took numerous psychotropic drugs while incarcerated, including Trazadone (Tr. 406), Prozac (Tr. 397), Risperdal (Tr. 353) and Seroquel (Tr. 363). On January 13, 2006, she was placed on suicide watch due to a self-inflicted head injury (Tr. 245). She was also suspected of drug-dealing after being

found with medication not prescribed for her in February 2006 (Tr. 233, 238). Later that year the claimant cut her forearms with a razor blade in reaction to receiving a "program failure" for walking out of her substance abuse therapy group (Tr. 213). She explained that she "felt like [she] had failed at everything and [she] didn't have any answers" (Tr. 211). Two months later, the claimant was involved in another episode of self-mutilation (Tr. 204), at which time it was noted that her "mental illness/symptoms do not interfere with her understanding that she should not break a razor and self-injure . . . Ms. Bekinnie fully understands that self-injuring is inappropriate . . . [t]here are no contextual factors, medication or treatment issues which suggest Ms. Bekinnie should not be held accountable for her behavior" (Tr. 181).

Prior to leaving Mabel Bassett, a psychological discharge summary was prepared for the claimant (Tr. 153-55). The summary noted that the claimant had seven children and that her husband was incarcerated for impregnating her teenage daughter (Tr. 153). She was molested by her older brother when she was eight years old and her parents were violent alcoholics (Tr. 153). It was noted that the claimant "hears voices and experiences some paranoia" and that "her plans for her future include . . . going to vocational school to become a radiology technician" (Tr. 154). She was assessed with a GAF of 50, and it was noted that her "affect tends to be flat, with nonblinking eyes" (Tr. 154). After being released from prison, the claimant was assessed upon intake into PACT with a GAF of 40. Dr. Kenneth O. Williams, a staff psychiatrist at Carl Albert Mental Health Center,

later assessed the claimant's GAF in the range of 51-60, and noted that her prognosis was "guarded" (Tr. 465).

The ALJ found that the claimant had severe mental impairments of schizoaffective disorder, poly substance dependence and borderline personality disorder (Tr. 11). In assessing her RFC, the ALJ considered a letter from the claimant's PACT team leader (Tr. 14, 15), her PACT intake interview (Tr. 14), and a PRT/Mental RFC Assessment performed by state agency psychiatrist Dr. Burnard Pearce, who reviewed the claimant's medical records but did not examine her (Tr. 419-36). The ALJ did not, however, discuss (or even mention) any of the claimant's GAF scores.

"Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. The ALJ should thus have considered the claimant's low GAF scores (especially those of 50 and below) and determined whether such low scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). Further, because Dr. Pearce likewise made no reference to the claimant's GAF, it is unclear whether he considered

them in reaching his own conclusions. *See, e. g., Lee*, 117 Fed. Appx. at 678 (noting that the ALJ on the report of a physician who made no mention of GAF score).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to rely only upon the evidence that supported a finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). Because the ALJ failed to discuss probative evidence inconsistent with his mental RFC determination, *i. e.*, the claimant's low GAF scores, the undersigned Magistrate Judge cannot determine whether he actually considered such evidence. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991).

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis as to the claimant's mental RFC. If the ALJ makes any

adjustments to the claimant's RFC on remand, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is consequently REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**